UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                       Case No. 18-CR-232

CATALINA TABOADA,

        Defendant.

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Keith S. Alexander, Assistant United States Attorney, and the defendant, Catalina Taboada, individually and by attorney Daniel W. Stiller, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGE

2. The defendant has been charged in a one-count information, which alleges a violation of Title 26, United States Code, Section 7206(2).

3. The defendant has read and fully understands the charge contained in the information. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES**

On or about February 6, 2014, in the State and Eastern District of Wisconsin,

**CATALINA TABOADA,**

did willfully aid and assist in, and procure, counsel, and advise the preparation and presentation to the Internal Revenue Service a U.S. Individual Income Tax Return, Form 1040, on behalf of S.F., which the defendant knew was false and fraudulent as to a material matter.

In violation of Title 26, United States Code, Section 7206(2).

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

In 2009, Catalina Taboada started her own tax preparation business in Green Bay, Wisconsin, called Taboada & Associates. After opening her own business, she started to prepare false tax returns on behalf of her clients in several different ways.

I. Filing false CTC and ACTC claims

The primary way that she falsified returns was to fraudulently claim the Child Tax Credit ("CTC") and the Additional Child Tax Credit ("ACTC"). Taxpayers qualify for these credits if they have minors under the age of 17 living with them in the United States for at least half of the year. However, agents learned from interviewing many of Taboada's clients that she regularly encouraged them to claim children who are relatives of theirs living in Mexico the entire year to obtain the credit.

An example of this is how Taboada handled S.F.'s tax return, which is the subject of Count One of the Information. Taboada prepared a tax return for S.F. on February 6, 2014. The return claimed that S.F. was married to L.M., and also

2

claimed seven children as their dependents. The seven dependents allowed S.F. to claim $6,782.00 in an additional child tax credit.

When an IRS special agent interviewed S.F. in January 2016, S.F. told him that she was not married to L.M., and that she only had one son. The other six children reported on her tax return were relatives of hers. Five of the children, according to S.F., lived in Mexico and never were in the United States. One of the children lived in Virginia for a couple years, but never lived with her.

S.F. recalled telling Taboada about the children who lived in Mexico. She also remembered that Taboada had an employee prepare the tax return, and then later Taboada reviewed it before it was submitted.

By falsely submitting five of the children who always lived in Mexico as individuals who qualified for the ACTC, Taboada caused a loss of at least $4,873 by preparing and submitting S.F.'s tax return.

An undercover operation further corroborated what S.F. told agents. On February 25, 2014, one undercover agent went to Taboada to have a tax return prepared, and recorded his conversation with her. Taboada advised him that he owed $157.00. She then asked the undercover agent whether he had siblings or cousins in Mexico. She explained that she just needed names of kids that "have your last name . . . because you have the potential of earning $2,000." She further explained: "There are two truths. The written one is the kids that are here, they get a thousand dollars. But the practical truth is that it doesn't matter if they are here or they are there, they get the money anyway." She continued in the conversation, "It's your decision. I can do it for you but you will have to do an amendment or you can wait to get the birth certificates of the kids and the medical and school [records] . . . and with all that you can request and get the money."

On March 18, 2014, the undercover agent went back to Taboada's business with original Mexican birth certificates and school records of unrelated children currently living in Mexico. The agent met with two of Taboada's employees, who entered the information into the tax return, and listed the two unrelated children as a dependent niece and dependent nephew. The tax return claimed an additional child tax credit of $2,000. The refund amount claimed the federal tax return was $2,771.

II.     Falsely claiming a person as a dependent

In addition to earning a child tax credit, individuals who make enough money may also earn a dependent exemption of nearly $4,000 per child. In order to qualify for this exemption, at the very least, the dependent has to be a resident of the United States, Canada or Mexico. Taboada nevertheless prepared tax returns claiming people as dependents who she knew did not live in any of those three countries.

3

For instance, for tax years 2012 to 2014, Taboada prepared tax returns for D.L and G.L. In 2012, they claimed five dependents. In 2013 and 2014, they claimed three dependents. In January 2016, an IRS special agent interviewed G.L., who said that other than her daughter, the others that they claimed as dependents were their nieces who lived in Honduras. She said that they sent money to their nieces in Honduras to help them with their expenses. She also said that while Taboada's employees always prepared the returns, Taboada reviewed them before she filed them. She also recalled telling Taboada that her nieces lived in Honduras.

By falsely claiming that G.L's nieces both as dependents and children for child tax credits, Taboada caused a loss of $9,791.00 during tax years 2012 through 2014 on their returns.

### III. Falsely Claiming the Earned Income Tax Credit ("EIC")

The earned income tax credit ("EIC") is a refundable tax credit for low- to moderate-income working individuals and couples, particularly those with children. It essentially allows individuals and couples to claim a credit in addition to the CTC and ACTC for qualifying children if their income is below a certain amount.

In order for a child to qualify for the EIC, the child must live in the United States for half of the year with the taxpayer, and the child has to be a son, daughter, grandchild, brother, sister, niece or nephew. Cousins do not qualify for the EIC. Taboada nevertheless claimed cousins, and other unqualified children, for the EIC.

For example, P.R. claimed a number of children as her nieces and nephews who were either cousins, or other distant relatives who did not qualify as a child for EIC purposes. When an IRS special agent interviewed P.R. in January 2016, she said that she communicated that to Taboada, but Taboada nevertheless prepared and filed returns claiming those children as her nieces and nephews. The false submissions on P.R.'s tax returns for tax years 2012 through 2014 caused the IRS to issue the ACTC and the EIC to P.R., causing a tax loss of $18,474.

### IV. Transportation Expenses

Taboada also falsified tax returns for her clients by fraudulently claiming transportation expenses as a deduction. A travel expense can be deducted as a business expense, but not for regular travel from a person's home to a regular place of business. Taboada, on a number of occasions, claimed a deduction for her clients when it was just regular travel from their home to their job.

### V. Taboada's Admissions to IRS Agents

On August 19, 2015, IRS agents interviewed Taboada at her home. During the interview, Taboada accurately explained the rules for qualifying for the ACTC,

4

the CTC, and the EIC. She also understood the dependent exemption rules as well.

Nevertheless, she admitted to "trying to help" her clients by reporting children on their returns for these credits and exemptions when she knew that they did not qualify. She admitted claiming the ACTC and CTC for children who she knew lived in Mexico. She also admitted to oftentimes identifying these children as nieces and nephews, even when she knew they were not actually the filer's nieces and nephews. When asked why she falsified people's tax returns, she said that she did so to "stimulate the economy."

In total, Taboada admits to causing a loss of $571,800 by willfully and knowingly filing false tax returns on behalf of her clients.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum penalties: three years of imprisonment, $250,000 fine, one year of supervised release, and a mandatory $100 special assessment. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 27 of this agreement.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of preparing and presenting a false tax return, as set forth in Count One, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant aided or assisted in the preparation or presentation of an income tax return that was false as to a material matter. There must be some affirmative participation which at least encourages the perpetrator. The return must be filed with the Internal Revenue Service; and

5

<u>Second</u>, that the defendant knew that the income tax return was false, that is, that the income tax return was untrue when it was made; and

<u>Third</u>, that the defendant acted willfully, that is with the intent to violate the law.

**SENTENCING PROVISIONS**

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions which they believe to be applicable to the offense set forth in paragraph 5. The defendant acknowledges and agrees that her attorney in turn has discussed the applicable sentencing guidelines provisions with her to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

6

Case 1:18-cr-00232-WCG   Filed 12/17/18   Page 6 of 15   Document 2

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in Count One is 20 under Sentencing Guidelines Manual § 2TK4.1, because she caused a tax loss of over $550,000.

## Specific Offense Characteristics

17. The parties agree to recommend to the sentencing court that a two-level increase for being in the business of preparing or assisting in the preparation of tax returns, under Sentencing Guidelines Manual § 2T1.4(b)((1)(B), is applicable to the offense level for the offense charged in Count One.

## Acceptance of Responsibility

18. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the

7

defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

## Sentencing Recommendations

19. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

20. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

21. The government agrees to recommend a sentence at the bottom of the applicable sentencing guideline range, as determined by the court.

## Court's Determinations at Sentencing

22. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

23. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

24. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

25. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

### Special Assessment

26. The defendant agrees to pay the special assessment in the amount of $100.00 prior to or at the time of sentencing.

### Restitution

27. The defendant agrees to pay restitution in the amount of $571,800 as ordered by the court to United States Department of Treasury. The parties understand and agree that the court order to that effect will be pursuant to 18 U.S.C. § 3662(a)(3). The defendant further

9

agrees that the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## DEFENDANT'S COOPERATION

28. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

29. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30. The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31. The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights,

11

including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32. The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

33. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

34. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

35. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

36. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

37. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Further Action by Internal Revenue Service

38. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the

13

defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 12/05/2018

CATALINA TABOADA
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 12/11/2018

DANIEL W. STILLER
Attorney for Defendant

For the United States of America:

Date: 12/13/18

MATTHEW D. KRUEGER
United States Attorney

Date: 12/13/18

KEITH S. ALEXANDER
Assistant United States Attorney

15